We will hear argument next in Case 19-963, Henry Schein v. Archer & White Sales. Mr. Shanmugam? Thank you, Mr. Chief Justice, and may it please the Court. This case presents an important question concerning the interpretation of agreements that delegate questions of arbitrability to the arbitrator. In its decision on remand, the Court of Appeals recognized that the arbitration agreements here contained a valid delegation. But it held that because the agreements also contained a carve-out provision, they divided up responsibility for arbitrability between the arbitrator and the Court. The Court of Appeals proceeded to decide the arbitrability question for itself, thus effectively negating the delegation altogether. That reasoning cannot possibly be correct, and Respondent does not seriously defend it. This Court should once again vacate the Court of Appeals' judgment. To do so, the Court need only apply two settled principles. First, a delegation is simply an antecedent agreement that is subject to the rules governing arbitration agreements more generally. Second, any doubts concerning the scope of arbitration agreements are resolved in favor of arbitration. And under that presumption, a carve-out provision that does not speak to who should decide questions of arbitrability cannot restrict the party's delegation of those questions to the arbitrator. Respondent primarily focuses not on the question presented, but on another question, whether the incorporation of arbitration rules that authorize the arbitrator to resolve questions of arbitrability constitutes a valid delegation. But the Court correctly declined to add that question at the certiorari stage, because 12 circuits have held, without conflict, that the incorporation of arbitration rules is sufficient. That holding is plainly correct, and overturning those decisions, without the benefit of full briefing on both sides, would work an evulsive change in the law. The Court should stick to the question it agreed to decide, and it should decide that question in petitioner's favor. The judgment of the Court of Appeals should be vacated. I welcome the Court's questions. Thank you, Counsel. When you look at the pertinent clause at issue here, the one thing that's clear is that they did not want action seeking injunctive relief to be arbitrated. They say that expressly, right at the outset. As soon as they say any dispute, they have the carve-out right there. So they didn't want arbitrators dealing with actions seeking injunctive relief. Now, if that's the case, and it was important enough for them to spell it out right at the outset, wouldn't the last thing you'd think they would want is for an arbitrator to decide which disputes qualify? I mean, that would seem to follow a fortiori. They don't want arbitrators deciding this. Why would they want arbitrators to decide who gets to decide it? Mr. Chief Justice, I agree with you that the carve-out provision plainly carves out actions seeking injunctive relief from the scope of the arbitration agreement. But the question we're talking about this morning is a different one. It's whether they intended to carve out disputes about who decides whether something falls within the carve-out. No, no, that was my precise question. If they don't want arbitrators around injunctive actions, why would they want arbitrators to decide who gets to decide that? Well, I think that that's because it is highly unlikely that parties would ever want to divide up responsibility for arbitrability. After all, the whole point of a delegation is to resolve the who decides question. It's to streamline the process by having the arbitrator decide the scope of the arbitration agreement. And I think that the Court of Appeals' opinion in this case well illustrates the problem here. Because the Court of Appeals, having said that the plain language of the agreement divided up responsibility for arbitrability, preceded itself to resolve that very arbitrability question. Well, but they divided up the universe of actions here between some that will be arbitrated and some that won't be. And I don't know why you'd have such a presumption against doing the same with respect to arbitrability. Because arbitrability is different, Mr. Chief Justice. It's the question of who decides. And where you have a dispute, it would be very strange to say that the question of who decides is itself divided because somebody would have to resolve that doubly antecedent question. And I would be content to argue that our reading is the better reading of the agreement as a matter of common sense. But our submission here is simple. It's that the presumption of arbitrability should apply, and the Court of Appeals erred by failing to apply it here as a matter of federal law. Thank you, Counsel. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Shanmugam, it sounds as though you think that the delegation of arbitrability is all or nothing. How would you draft this provision so that it can divide the authority to arbitrate? Justice Thomas, we don't think it's all or nothing. So, again, we think it is highly unlikely that the parties would want to divide up responsibility. But suppose that you had a provision much like the provision at page 27 of Respondent's Brief that said something along the lines of, except for an action seeking injunctive relief, the arbitrator shall decide whether the party's dispute is subject to arbitration. There, the carve-out clearly and unambiguously would operate on the question of arbitrability. But we'd still be left with the problem that I was just discussing with the Chief Justice. In that circumstance, someone would still have to decide whether the action is, in fact, an action seeking injunctive relief. Someone would have to decide where there is a dispute over whether the arbitrator or the court should decide arbitrability. And, again, the Court of Appeals' decision well illustrates the problem, because having held that the parties divided up responsibility, the Court of Appeals proceeded to decide the question of who decides for itself and thus effectively negated the delegation altogether. Could you just help me with the delegation language in this contract, this arbitration agreement? Where is it? I don't see the word delegation at all or a verb delegate at all. Would you walk me through that? Sure. And, Justice Thomas, this goes to the question that Respondent is seeking to insert into the case, but I'm happy to address the merits of it directly. The question is whether the incorporation of arbitration rules that authorize the arbitrator to resolve questions of arbitrability constitutes a valid delegation. Here, the incorporation is the reference to the arbitration rules of the American Arbitration Association. That's quite common in agreements between sophisticated commercial parties like the parties here. And among the relevant rules is Rule 7a, which authorizes the arbitrator to make that determination. And this court has never required magic words on the face of the agreement. Instead, all that the court has said is that you have to have clear and unmistakable evidence. And under ordinary objective principles of contract formation, the incorporation of a document suffices in order to render that document part of the contract. Thank you. Justice Breyer? Neat experience of arbitration in the labor area for this question. I assume that George Berman's brief makes a big argument about the AAA, but I won't accept that for purposes of this question. I assume there is clear and unmistakable evidence of delegating the arbitration matter to the arbitrator in general. Okay? Now, I also think that first options rests heavily and basically repeats AT&T. So I've read AT&T about five times. And what it seems to say is if you have a question, parties or one of them, whether this dispute falls under the terms of a contract that have arbitration, falls once to paragraphs 1 through 7, or is rather a Section 10 dispute where there is no arbitration, clearly. You don't know if it's a Section 8 or a Section 10. Well, what happens? What AT&T says, but that is a question of arbitrability. It is a question of whether this dispute is arbitrable. So it's for the judge. But where there is an arbitration clause in the contract, as there wasn't in first option as far as the owners knew, but where there is an arbitration clause, then there is a presumption of arbitrability. All right? So that seems to me, judge, you decide. You decide whether this particular dispute is sent to an arbitrator or for the court, i.e., is it arbitrable. You decide, judge. But if there is an arbitration clause in the contract, you decide with the presumption of arbitrability that it will normally be arbitrable. That's what it seems to say. And so the judge was right to decide it below. But he didn't decide it right because he should have given it a presumption of arbitrability. Now, that's how I read those two cases. But also in the back of my mind is what in heaven's name has happened in labor arbitration. In the ordinary labor arbitration case, and that's where all this law comes from, where one party, the labor union, says this is a section 8 agreement, arbitration. No, says the employer. It is a section 10 kind of situation grievance. And therefore, it falls within the exemption, don't arbitrate it. How do they decide that? The scope. You see, that's like the scope of the arbitration clause in the agreement. Did you follow that? I did, Justice Breyer, and let me attempt to answer it very briefly, and I'll make two points. The first is that the first options rule, with which I know you are well familiar, does come from the labor context, but I think it operates in the same way. And I think it's easiest to understand this conceptually. If you think about the delegation as a kind of miniature contract formation, in other words, was there a meeting of the minds that the arbitrator should decide questions concerning the scope of the arbitration agreement? And that's precisely why we think an incorporation is sufficient, because under ordinary principles of contract formation, that is enough. And then once you have that clear evidence, the presumption flips to the normal presumption, because you treat the delegation like an arbitration agreement, and you apply the presumption of arbitrability. Absolutely. Who does that? The judge or the arbitrator? If there's a delegation, it's for the arbitrator to make the decision. Where have you got the precedent for that? Because when I read the five paragraphs in AT&T, it seemed to say, yes, that's the rule you apply, but the judge should apply it, because it's a question of arbitrability. Very briefly, counsel? If you don't have a delegation, then of course it's a question for the court to decide. Justice Alito? What do you understand to be the basis for the presumption of arbitrability? It was recognized, I think, the first time in Moses Cohen, and the court said that it was based on the federal policy favoring arbitration, and it's section two of the Federal Arbitration Act. But the federal arbitration, section two, we have also said, requires equal treatment of arbitration contracts and other contracts. So what is the basis for saying that there is this federal policy that produces the presumption that you rely on? It's a good question, Justice Alito, and I'm not sure that the court has ever spoken to it, so let me offer a potential explanation. As you rightly point out, this court has repeatedly said that section two of the Arbitration Act, along with other sections, establishes the principle that arbitration agreements should be enforced according to their terms. But I think this court has also recognized the presumption in favor of arbitration as flowing from the policy underlying the Arbitration Act as a whole. And that presumption, in turn, to pick up where Justice Breyer left off, seems to come from the labor context, where, of course, under federal law, you have the Labor Arbitration Act, and you have in that act, in the NLRA, a recognition that federal courts can recognize federal common law. So I think if I were pressed, I would say it's probably ultimately a matter of federal common law, but it also appears to flow from the terms and the structure of the statutes themselves. Very quickly, I have basically the same question as the Chief Justice. This case comes to us in a rather artificial posture, so we're required to assume that the contract provides for the arbitration of the who-decides question across the board. And, of course, if that's true, then the answer to the question that we're supposed to decide is foreordained. But isn't that artificial? When you have a carve-out, and the parties have taken pains to say, this subject, we don't want the arbitrator to have anything to do with this subject. We want the judge to decide this, because this is something that needs to be decided in accordance with the law, and we know that arbitrators have a lot more leeway in interpreting contracts. Isn't that relevant to the question of the scope of the delegation of the power to decide who decides? That is the very question before the court, and very briefly, Justice Alito, our interpretation makes complete sense, because under our interpretation, the carve-out operates as only a carve-out from the scope of the arbitration agreement. It gives the court the power to enter preliminary injunctive relief pending an arbitration, but the question of who decides is a discrete one, and it wouldn't make any sense for the parties to carve-out from that, absent a clear indication to that effect. Thank you. Justice Sotomayor? Counsel, you make much of the fact that we didn't grant cert on the cross-petition, but in your opposition to the cross-petition, and even in your reply on the merits, you say we can reach the issue. In fact, you admitted in your cross-petition that we could affirm on alternative grounds, and that it was incorporated, and you encouraged us not to grant it. So I don't understand how you can tell us that we have to assume there was a clear delegation of both the exception and all other disputes. So sort of educate me as to having said we could, why you're saying we can't now? Justice Sotomayor, you, of course, could decide the incorporation question, and I don't think we've ever disputed that. Our submission today, as in our earlier briefs, is simply that the court shouldn't. And very briefly, to go back to what we said at the cert stage, we said that a cross-petition was unnecessary. But then we proceeded to devote, I believe, six pages of our opposition to the cross-petition in explaining why the court shouldn't add the incorporation question to our cert petition, namely because there was not a circuit conflict. All right. May I just ask a question? First option makes it very clear that we have to have a clear delegation. But I think what the court below said was what is unclear is whether the form of the delegation here was intended to be included in that opportunity section. There's a very limited holding saying where a party says, I will arbitrate all disputes except a particular one. The issue is whether a particular one was delegated to the arbitrator in the following arbitration agreement. It seems pretty logical. Not an argument that the court below adopted doesn't seem to be irrational or even nonsensical. It seems fairly natural to me. If I believe there's ambiguity in what was intended to be delegated or not, how do I rule in your favor? Because of the presumption of arbitrability. And that is where the Court of Appeals went wrong. The Court of Appeals did think that the scope of the delegation was unclear. But once you have a delegation, this court's decisions make clear that you treat that like an arbitration agreement. And at that point, you have to apply the presumption of arbitrability. Thank you, counsel. Justice Kagan? Mr. Shamagin, you acknowledged, I think, to the Chief Justice, that however likely or unlikely you think it might be, however logically flawed or completely natural you think it might be, that parties can divide up arbitrability questions and give some to judges and some to arbitrators. Is that right? Yes, if I could say one thing. Let's assume the following. Let's assume a provision that says, except for actions seeking injunctive relief, we the parties agree that we'll, number one, arbitrate any dispute arising under disagreement, and number two, that the arbitrator will decide all questions of arbitrability. Wouldn't it be clear on its face of that that the parties had given questions of arbitrability to the courts in actions seeking injunctive relief? I think that that's a closer question because of the way that you've modified the provision. I don't think I've modified the provision at all. I mean, I basically turned the reference to the AAA rules into a delegation, which is what you want me to do. And then I've suggested that the reading of this provision, that the except clause, applies both to the agreement to arbitrary disputes and to the delegation. I think you've made a subtle but important change because in this provision, the relevant incorporation is introduced by in accordance with, and in our view, the carve-out really operates only on what is subject to arbitration. Now, even if you disagree with me on that, I think I would be left with my point that it is unlikely, and indeed, in my view, absurd to think that the parties would define a carve-out that is coterminous, both with regard to what is subject to arbitration and with regard to what is subject to the delegation. Well, Mr. Sherman, I think it's not absurd for exactly the reason that the Chief Justice said, that once you decide that certain questions should be in the court here, suits involving certain suits should be in the court, here are suits seeking injunctive relief, you're not going to want to go to the arbitrator to decide whether suits plausibly seeking injunctive relief are in fact that. You would just want to keep this in the courts generally. So there's nothing unnatural or logically flawed to say, look, if you have something, which at least arguably seeks injunctive relief, the court should deal with the question of whether it does, and then should go on to decide the issue. Justice Kagan, you could say the same thing regardless of whether an arbitration agreement contains a carve-out. And so suppose you had this very provision without the carve-out. Any dispute arising under this agreement should be resolved by arbitration in accordance with the AAA rules. If you have a dispute about whether something is in fact arising under the agreement, in our view, that should go to the arbitrator by virtue of the incorporation. Justice Gorsuch? Mr. Shemigan, I'd like to return to the line of question Justice Alito was pursuing, and that is the presumption in favor of arbitration and the exception for clear and unmistakable delegations of arbitrability. These presumptions that we've recognized in our case law, you indicated had both a statutory and a common law basis. I want to understand your statutory argument better for the moment. Assume I'm going to put the common law ones aside. You pointed us to Section 2, but Section 2 seems to suggest we follow normal contract rules in trying to discern the party's intentions. What am I missing? I don't think you're missing anything, Justice Gorsuch, because I really do think that the court has never spoken to this. But I think, quite frankly, that the origins of what we refer to as the first options presumption, but it really originates in the court's labor cases, are, frankly, somewhat more nebulous. If you trace that back, it really traces back to a footnote in one of the Steelworkers' cases that in turn relies on a Law Review article written by Dean Cox. Now, there's no better person to have write a Law Review article than Dean Cox, but ultimately, I think that that presumption just rests on an empirical presumption that parties often don't focus on arbitrability. I think, by contrast, the presumption in favor of arbitration is a venerable one often reaffirmed and applied by this court, and it's one that applies across the board. And, again, it simply reflects the strong federal policy in favor of arbitration. I'm still waiting for a statutory argument, though. I get that there are venerable Law Review articles and lots of statements in our cases, but is there indeed any statutory basis for any of these? Well, I think I can't do really much better than Section 2, and as I acknowledged earlier, I think that there is some tension between the principle that it applies according to its terms and the presumption in favor of arbitration. My point, Justice Gorsuch, is simply that all that the court needs to do in this case is to apply the presumption in favor of arbitration to the delegation to rule in our favor, and what the court shouldn't do is what Respondent suggests, which is to extend the first options presumption beyond the context of whether or not there is a delegation to the scope of the delegation. The latter is a question of contract interpretation, and it should be governed by whatever the general rules are that govern the interpretation of arbitration agreement. Thank you. Justice Kavanaugh? Thank you, Chief Justice. Good morning, Mr. Shammugam. I just want to make sure I have the roadmap clear here with you. The premise of the case, as you're presenting it to us, is that this contract language expressly delegates the question of arbitrability to the arbitrator. Correct? Yes, that's right, or by incorporation, to be sure. Yeah, by incorporation, and you say if we want to figure out whether the AAA rules actually are an express delegation, we should grant cert on that question at some point and decide that, but for here, we can assume express delegation, correct? Correct. Okay, and then your point is that the Fifth Circuit, I think this is your argument, confused the question of arbitrability, namely what subjects are decided by an arbitrator and what subjects are decided by a court, confused that question with the question of who decides arbitrability. Is that right? Yes, also correct. Okay, and then in the real world, I want to pick up on some of Justice Kagan's questions, kind of real world how people draft these contracts, what they expect. My understanding was that the question of who decides arbitrability, the who decides question, is almost never divided between a court and an arbitrator because that would be almost nonsensical in the real world because you need one person to decide, and it's either going to be the court or the arbitrator, not both the court and the arbitrator. Is that correct? That's correct, and I'm aware of no examples of such a division. Right, nor am I. Okay, and then in considering the effect of a carve-out, I guess that would apply, as I understand it, to every arbitration contract or virtually every arbitration contract because every arbitration contract specifies either limits or has carve-outs, and so if that alone means the court decides what is arbitrable, then the court will always decide arbitrability and really eradicate the idea that arbitrators can never decide arbitrability. Is that accurate, or am I missing something? Yes, that's correct, and that gets to the point that I made in response to Justice Kagan. If you take a look at page 119 of the Joint Appendix, you'll see the AAA's model arbitration clause, and that provision is very similar to the provision at issue here, except that it lacks the except for language, and as I indicated, you would have exactly the same question when you have a dispute about whether a claim is, in fact, arising under the contract or out of the contract. Right, can I ask one last question, Mr. Sheerhan? Sure. I think this picks up on maybe the premise of the Chief Justice's question. What if the arbitrator does something crazy and says actually that a clause for injunctive relief doesn't mean what it says or a carve-out for injunctive relief doesn't mean what it says, and I'm going to have an injunctive claim decided by the arbitrator? What happens then? That would be subject to very limited judicial review under the Federal Arbitration Act and under Section 10, but of course that's just by virtue of the operation of the Arbitration Act that that review is so limited. But there is judicial review, at least of some sorts, if that happened? I think most courts of appeals have said that there would be under those circumstances. Justice Barrett? Mr. Shanmugam, I really just have one question, and it goes to the premise of your argument, which is that there was a clear and unmistakable delegation of all questions of arbitrability in the first place, because basically, as I understand it, your argument is given that clear and unmistakable delegation, the presumption was flipped, and so the Fifth Circuit was wrong to read this carve-out as a carve-out from arbitrability as well as to the what, the subject matter of the dispute. Let's say that we're not going to address the question on which we denied cert, which is whether reference to the AAA rules suffices to be that clear and unmistakable delegation of arbitrability. Here, as you point out, this carve-out, you say that it would be nonsensical, even though parties can do it because they can contract and agree to what they want to, that it would be nonsensical to carve up arbitrability questions. If that's true, why isn't that reason to interpret this clause as not being a clear and unmistakable delegation of all questions of arbitrability? I mean, is just the invocation of the AAA rules enough, given the inclusion of what you say would be a pretty odd language? Justice Barrett, I think the problem with that argument is that the agreement incorporates by its terms all of the AAA rules, not just some of them, as respondents suggest, and so the carve-out would at most limit the substantive scope of any delegation. And I want to make one further point about the relationship between these two questions, because I think a number of the questions this morning have touched on this. Even respondents concede that the incorporation question is discreet from the carve-out question. Indeed, in an earlier filing in response to our stay motion, respondents said that the court need not reach the incorporation question in order to resolve the carve-out question. So I do think that it is appropriate for the court to assume, as 12 circuits without a conflict have held. But let me interrupt you just for one second, Mr. Shanmugam. Is it enough just to incorporate and invoke the AAA rules? Does that in and of itself constitute a clear and unmistakable delegation, no matter what else the provision may say? I think that it is enough for there to be a delegation by virtue of Rule 7a. As a matter of contract formation, there is an agreement to arbitrate arbitrability. At that point, Justice Barrett, everything else that we're talking about is a question of interpretation. It's a question of the scope of the delegation. And this court in Renna Center, in its earlier decision in this case, has said that at that point, the rules applicable to arbitration agreements and the interpretation of arbitration agreements apply. The Court of Appeals' legal error here was in failing to apply the presumption of arbitrability. Thank you. A minute to wrap up, Mr. Shanmugam. Thank you, Mr. Chief Justice. This is an unusual case because Respondent makes no real effort to defend the reasoning of the Court of Appeals in the decision below. Instead, Respondent is really asking the court to decide this case based on a different question, the incorporation question. And that would be a bold strategy in any case, but I would submit it's a particularly bold strategy here because Respondent asked the court to decide that question at the third stage, and the court seemingly consciously made the decision not to add it. Now, that question, in our view, doesn't warrant the court's review, and it doesn't warrant the court addressing it here in light of the overwhelming consensus of the lower courts on that question. But if the court were to reach that question anyway and to reject the consensus view, it would have dramatic consequences for innumerable commercial contracts that are worded much like the contracts here. All that the court need do in this case is to hold that the Court of Appeals' actual reasoning is inconsistent with this court's decisions applying familiar Federal Arbitration Act principles, and for that reason, the Court of Appeals' judgment should be vacated. Thank you, counsel. Mr. Geiser? Thank you, Mr. Chief Justice, and may it please the court. The arbitration clause here does not delegate any gateway questions to the arbitrator, and even if it did, the party's contract clearly exempts this dispute from the scope of any delegation. Petitioner's contrary contention is incompatible with the FAA, this court's authority, the agreement's plain language, and simple common sense. We submit that the court can affirm for two independent reasons. First, the mere incorporation of the AAA rules is not clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. This court applies an interpretive rule based on reasonable assumptions about the party's likely intent and presumed expectations. Yet the arbitration clause here is silent on delegation. It does not utter one syllable about it. Anyone actually aware of this arcane issue would address the subject expressly on the face of the agreement, and that is especially so against the backdrop of this court's heightened standard and how easy it is to address the question directly. It is simply not plausible that anyone would recognize this issue and choose to resolve it by relying on an oblique reference to the AAA rules, rather than a simple, explicit sentence delegating the gateway issue. Second, even if there is a delegation clause, it does not reach this dispute. Petitioner says the delegation is hidden in the AAA rules, but those rules do not even apply unless the action falls within the category of disputes subject to arbitration. If an action falls within the carve-out, then it is not subject to arbitration, and it is not subject to arbitration under the AAA rules. It makes no difference what those rules say because the condition for activating them is unmet. Once the contract is read to mean what it so plainly says, all the confusion disappears. It provides for arbitration generally, it exempts certain types of actions from arbitration, and it requires that any arbitration be conducted under the AAA rules. The only reason petitioner finds this simple language bizarre, confusing, or circular is because petitioner is trying to smuggle in a delegation clause where it so plainly does not exist. Counsel, I think the most important question for you is a challenge that your friend on the other side has really laid down clearly, and it was the one that Justice Kavanaugh was talking about. How do you distinguish a situation called a run-of-the-mill situation where there is no express carve-out? I would say that the agreement applies to all labor disputes within the factory. There is a storage facility right next door where they keep things that are used in the factory, but they also keep other stuff, and the union says we want to arbitrate a dispute about that building, and the factory owner comes in and says, no, no, that is not within the arbitration agreement. That is not part of the factory. Now, why isn't that analyzed the same way you analyze your contract and say, well, that is a question of arbitrability, and that should be decided by a court? What makes that situation different? Well, I think that what would make it different is if there is an express delegation provision, and normally when parties include an express delegation provision, it is unconditional and categorical. It is not like what you have here. If parties are simply referencing the AAA rules, they are presumably doing that. I wish you would just leave the AAA rules out of it. I think that is what we tried to do when we denied cert on that question. The argument on the other side is that the issue that you are trying to elevate outside the normal situation comes up all the time because arbitrators are always deciding whether something is within the scope of arbitration or not, and that that issue has never been treated as a question of who decides. But why is your case different? Well, I think that typically is a question of arbitrability, and the default is that the court decides that issue. The only time an arbitrator decides whether a dispute falls within the scope of the agreement is if there is in fact a delegation provision. If there is one, then the question becomes, did the parties expressly carve out certain disputes from the delegation or from the scope of arbitration? We absolutely concede that if the exception is limited solely to the scope of arbitration and there is a separate unconditional delegation provision, that the arbitrator gets to make that determination. The problem here is that my friend's reading is profoundly atextual. If in fact the delegation is in the AAA rules and the sentence says on its face that some disputes but not others, those seeking injunctive relief, are subject to arbitration under the AAA rules, if this is one of the other disputes, then it's not subject to arbitration and it's not subject to the AAA rules, and the court gets to make that predicate determination. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice, counsel. Let's assume an express delegation here. Would you be able to make the same argument if there were an express delegation? It depends on what that express delegation is. Let's just take the AAA. Of course, we're not arguing about that, but basically the same thing, except that you use the term expressly delegates the authority to the arbitrator pursuant to the rules set out in AAA. Sure, and I don't mean to quibble, but I do think the phrasing matters. If it says that any dispute shall be resolved by binding arbitration and the arbitrator decides arbitrability, then in fact the arbitrator gets to decide it, but if you have the exceptions that are listed here, so it says any dispute except for action seeking injunctive relief are decided by arbitration under the AAA rules, which means the arbitrator decides arbitrability, the clause for activating the delegation does not apply because the carve-out would apply to the scope of the delegation. It's only when the carve-out is limited to the scope of arbitration, and that really isn't so unusual because most contracts with an express delegation clause, let's say you had this exact contract at issue in this case, but then there was the second sentence that said the arbitrator shall decide arbitrability. In that case, we would lose because there would be an express unconditional delegation of the issue of arbitrability to the arbitrator. The problem here is that the exceptions to the disputes subject to arbitration and subject to the supposed delegation are limited, and the carve-out applies to the category of disputes that otherwise would be subject to a delegation. So if I understand you then, your argument is that, well, who determines that? Would that then be the court? So you would actually say that with respect to the carve-out, the court makes the determination. Well, it seems to me you're taking it away from the arbitrator then. Well, Your Honor, unless there's clear and unmistakable evidence that the parties wanted the arbitrator to decide arbitrability, then the default is with the court, and the court has to first identify a delegation agreement and identify any limits to that delegation agreement. And I don't think there's anything at all unusual about that. In fact, it reflects the traditional presumption about the likely expectations and intent of the parties, and it reflects the plain text of the Federal Arbitration Act in Sections 3 and 4. Gateway matters are typically resolved by the courts unless the parties expressly say otherwise. Well, it still just seems as if it's a limitation on the authority of the arbitrator, which seems to be that normally the arbitrator would determine arbitrability, and here you're taking it away, so I see what the rub is. I don't know how you can have it both ways. You can say he has the authority in these limited circumstances, he doesn't. Well, Your Honor, I don't think so unless the court wishes to adopt a binary rule that says all delegations are all or nothing. But the court has never said that. Parties are perfectly free under the Federal Arbitration Act to delegate some issues to arbitration and to delegate some arbitrability issues to arbitration. And when the parties phrase the contract the way this is phrased, where they place a limit at the outset on the scope of disputes that are subject to the AAA rules, this contract does not say that all disputes are subject to the AAA rules, even though some are not subject to arbitration. Okay. Justice Breyer? All right. I've had a hard time because of the words arbitration, arbitrability. It's sort of like it's hard to be boldest in my mouth, okay? So please follow precisely. Assume you're wrong about the AAA. So we assume it is a clear delegation, okay? Assume that. Okay. Now let's assume the Chief Justice's example. Now if, in fact, there were a clause in the arbitration clause which says we delegate gateway matters to the arbitrator, it would be the arbitrator who decided whether his second warehouse fell within or outside the clause, right? That's correct because it would be an unconditional delegation. Okay. Okay. And in doing that, the arbitrator should apply the fourth rule in AT&T technology, namely a strong assumption in favor of arbitration, right? I think that's right. All right. Now, what he's saying is your friend on the other side. Look, take a list of 100 disputes between employer and worker, all kinds of things. They'll go to the arbitrator. Now, one thing on that list of 100 is who should decide the gateway matter of arbitrability. And we have in this contract, it is a contract that contains an arbitration clause, and that arbitration clause deals with gateway matters, and it sends them to the arbitrator. So precisely the same way that we would tell an arbitrator, do you decide matters before you decide the warehouse not or not, use a presumption of arbitrality. If the whole thing were clear, we should do the same thing here, apply the presumption of arbitrability on the gateway matters because there is a general delegation of question of arbitrability to the arbitrator, a general delegation of the gateway matter to the arbitrator, and section four says, I mean, the fourth principle of AT&T says, where that's so, you use an assumption, a presumption in favor, in this case, of arbitrability of the gateway matter. Now, I think that's what he's saying, but I'm not 100% positive. If you understood the question, which I hope I did, what's the answer? I think I did understand it, and I have two answers. The first is that this is not a general delegation to the arbitrator because it's not unconditional. It doesn't say that the AAA rules apply to all disputes. If this is a dispute falling within the carve-out, then it is not subject to the AAA rules. You don't even get there. It's as if you, my friend likes to say, reproduce the language into the contract itself, but that's not a complete answer. You would reproduce it with the introductory phrase that says, the following paragraph shall not apply in action seeking injunctive relief. So you don't even look to what that paragraph might say. You don't even get to the AAA rules or any supposed delegation. My second point is I think my friend's attempt to flip the first option standard on its head doesn't work. It's not consistent with this court's decision in Rent-A-Center. Rent-A-Center made clear that typically the court decides the gateway matter. Now, it did say that a delegation agreement is treated the same as any other agreement, but it dropped a footnote that said except when you're deciding if that agreement exists and what it is. Thank you, counsel. Justice Alito? Mr. Geiser, I want to ask you for help with a problem that is not at all your fault. It's our fault because we didn't – anyway, it's our responsibility. I won't say fault because we didn't grant the cross-petition, but because we didn't grant the cross-petition, I want you to assume that we are not going to decide the question that you wanted us to decide in the cross-petition. And if we make that assumption, I really don't know how to answer the question that we granted review on because it does seem to turn on the degree of the delegation to the arbitrator of the power to decide whether the arbitrator can decide. If I'm required to assume that all of that was delegated to the arbitrator, well, then the answer is clear. If I'm required to assume only that part of it was delegated to the arbitrator, then maybe under first options the answer is also clear. So as I said, if you just want to say, look, this is your problem, not mine, that's fine. But if you can help me with how I could deal with this within the constraints that I've outlined, that would be of assistance. Sure, Your Honor. And the first is I think it would be very difficult to intelligently decide this question in anything but the most abstract and artificial way without deciding whether in fact this is a delegation provision. Because you're effectively taking a single sentence, you're assuming a counterfactual for what half of it means. My friend is now saying you should construe any ambiguity in this sentence in a way that's profoundly atextual in order to accommodate this fictional delegation. And if the court later decides the delegation question and determines in fact, as I think we've shown, that this is not a clear and unmistakable delegation, then we'd have to overrule this case if you go against us. So I do think it's very difficult. You could dismiss the case as improvidently granted. You could request additional briefing, though I do think the question is fully briefed. But with all that aside, I still think that we can prevail in this case by simply following the absolute, plain, unambiguous language of what this contract says. I think that my friend's contention is that the case should come on the presumption that incorporating the AAA rules is a delegation clause. It's like a term of art. Now, I think that's wrong for lots of reasons. But if it is a term of art, the term of art does not apply here to any dispute falling within the carve-out. And so once the court construes this agreement to mean just what it says on its face, some disputes are subject to the AAA rules, but other disputes, those falling in the parenthetical, are not. And if they're not subject to the AAA rules, they're not subject to any delegation. And that's just a plain text reading of this agreement, with or without any presumptions. And I think it's the most straightforward way to affirm in this case. Thank you. Justice Sotomayor? Counsel, I've been confused because perhaps it's because, as you should, you should give us a lot of alternative ways for you to win. But I would like to break them down to understand them better. It seemed to me as I read your briefs that you were taking the position that incorporating a set of arbitration rules can never amount to a clear and unmistakable delegation. Is that your position? Our position is that the mere use of this text is insufficient. Now, parties could establish through extrinsic evidence, for example, that you have two arbitration scholars. This is their fifth agreement. They always use this language. Are you saying that this particular AAA language is insufficient? We're saying that… Let me finish. That this particular set of AAA language is insufficient, or that you can never incorporate an abundantly clear language like the JAMS rules? I think they say arbitrability disputes shall be submitted to and ruled on by the arbitrator. That seems pretty – as direct as you could get. If that was part of – if that was the AA rule, for example, are you saying that that itself would not be clear enough? We are saying that this linguistic formulation is not sufficiently clear because the reason parties would predominantly include this language is for an independent and obvious reason, and it's at the ground rules for the arbitration. I still don't think – counsel, please just answer my question. I gave you a clear statement. If that was the rule, could you never incorporate it? Not using this language, Your Honor. Not using the exception language. That's what you're saying. Without just nearly referencing the – if you replaced arbitration rules of the AAA here with arbitration rules of JAMS, it would still be insufficiently clear and unmistakable. Okay, because of the exception. Then I did understand you right. I understand the argument. I'm not sure it gets you where you want to be. For all the reasons that my colleagues have said, that where someone clearly has set forth that the scope of arbitration, which is the AA rule, is up to the arbitrator, then I don't see why we shouldn't honor that explicit request. Well, Your Honor, first, here all we know from the parties is that they were referencing the rules for the independent purpose of knowing where to show up for the arbitration and who to pay. There's no indication that the parties hid an elephant in a mouse hole and intended the AAA rules themselves to supply this separate contract, which is what it is, to delegate arbitrability. It does seem to me that I don't see any way to avoid that your position basically says that every arbitrability issue has to be decided by the court because every single arbitration agreement has limitations. Almost all agreements say any disputes related to this contract are subject to arbitration. And almost inevitably, a party will come in and say, this dispute is not related to a contract. And what would you have a court do? Decide that issue and then send it to arbitration? Even when a contract says all disputes involving arbitrability go to the arbitrator? Briefly, counsel? Sure. If there is an express delegation provision that's unconditional, so again, the same sentence here, there's a separate sentence that says the arbitrator shall decide arbitrability, then the arbitrator would make those determinations. But where the delegation as here is limited, the exceptions apply to the delegation, then the court necessarily has to make that determination. Justice Kagan? Mr. Geiser, I'd like to ask you about the petitioner's view of the presumptions here. As I understand it, it goes like this. First, we have a presumption that's in favor of arbitration. Then we have an exception to that presumption, which is the first options rule. When the matter deals with arbitrability, we actually presume that the court is supposed to decide those gateway questions. So for whatever reason we have those presumptions, the court has said many times that we have those presumptions. Then, as I understand what the petitioner is saying, he's saying, well, let's add a third presumption. The third presumption is if we see evidence of any delegation, then we should assume that the parties are meant to delegate all arbitrability questions. So if there's any delegation of arbitrability, there's complete delegation of arbitrability. That's the presumption, and he says that presumption should operate because it wouldn't make sense to do partial delegations of arbitrability. So I would like to hear what your response is to that argument. Sure, Your Honor. I don't think that that argument follows, and it's partly because the presumption in favor of the court deciding the gateway issue is designed to keep that most important issue before the court. That's traditionally what parties expect. That's what this court has said repeatedly is the likely intent of the parties. It provides a critical judicial safeguard, and it avoids a situation where the arbitrator is deciding the scope of his or her own jurisdiction. And there's every reason to assume that parties, again, the Federal Arbitration Act, can delegate certain issues but not others to the arbitrator. And knowing that the strong default is in favor of courts making those determinations, it does not make sense to say that once there is any inkling that the parties wanted something delegated. That everything is delegated. It makes more sense to say that unless parties clearly and unmistakably override the strong presumption in favor of courts acting as gatekeepers, as Congress imagined in the Federal Arbitration Act in sections three and four, that in fact the courts keep that gateway rule. On its face, it seems as though if you say the court should deal with the existence of a delegation, then the court should also deal with the breadth of the delegation. But I think he thinks that the problem is if you give that question to the courts, you force the court to decide what is arbitrable before the court decides who gets to decide that issue. Your Honor, the only time that's true is where the parties have drafted the agreement in that fashion. But again, the only reason that seems unusual here is because we're dealing with smuggling in a delegation where it doesn't actually belong. Assuming, as we assumed, that the AAA reference is a delegation. Yes, Your Honor. And again, assuming that it's still the case and the parties are perfectly free to do this, they can decide we will not bifurcate certain issues between the court and the arbitrator. And injunctive relief is actually a primary candidate for not wanting to bifurcate. Because it doesn't do parties much good in terms of the goals of arbitration of efficiency and expediency to have to go to the arbitrator, get an order for injunctive relief, go back to the court, and seek to enforce that order before the court. Justice Gorsuch? Thank you, Chief. I'll pass. Justice Kavanaugh? Thank you, Chief Justice and Mr. Geiser. Good afternoon. First, picking up on Justice Sotomayor's questions on the incorporation of the AAA rules, that's not the issue before us. But just to pause on that for a second, you referred to it as an elephant in a mouse hole. But it's really an elephant in the elephant hole when you look at the AAA rules. Rule 7a says the arbitrator shall have the power to rule on his or her own jurisdiction, including the arbitrability of any claim or counterclaim. That's very broad language, which is probably why every court of appeals to address this said that the AAA rules are an express delegation. But again, we don't have to decide that here. That's just a premise. But I wanted to just pause on the elephant in a mouse hole point. Here's the problem I think I have with your argument, and you've made it very cleverly and persuasively. But the problem is that you are suggesting that the way parties divide up arbitration, namely some subjects will be subject to arbitration and decided by an arbitrator and some subjects won't, also applies to the question of who decides arbitrability. So courts will decide whether certain things are arbitrable or not, and arbitrators will decide whether other things are arbitrable. I think that's what you're saying, but that's just not how it works in the real world, nor could it realistically work that way in the real world. I don't think any contract says arbitrability of certain subjects shall be decided by the arbitrator and others of other subjects by the court. Can you help me on that? Am I wrong? Well, I think so, Your Honor. I'd like to address the first question first. This is in fact an elephant in a mouse hole, and the best proof of that is parties use the same linguistic formulation when they have express delegation clauses. Can you just go to the second question since time is limited? Sure. In the real world, parties sometimes do limit a delegation. They might say that the court decides whether class arbitration is appropriate, and parties are perfectly free to do that. And here, if the parties decide – and I think on the face of this agreement, aside from just saying it's absurd, so we're going to toss aside the plain language of what the parties actually wrote in the context of the Federal Arbitration Act, which is trying to enforce contracts according to their terms. Well, I think it's – just to interrupt, I think what we're trying to figure out, does the carve-out apply to what subjects go to arbitration, or does the carve-out also apply to who decides arbitrability? And I think to the extent there's any ambiguity on that, the alleged absurdity seems quite relevant to deciding that question. That's fair, Your Honor, but again, I don't see any way to read the actual text of this agreement to say that the carve-out wouldn't include a carve-out to the AAA rules. Again, it would be different if the party said all disputes are subject to the AAA rules, even though only some disputes are subject to arbitration. That's simply not what they wrote. I don't see any way to say that that parenthetical carve-out applies to anything other than the disputes that are then subject to arbitration under the AAA rules. If it's not one of those disputes, it's not subject to arbitration under the AAA rules. Justice Barrett? So, counsel, I feel a little bit like Justice Sotomayor. This case feels like it's a little bit all over the map because you've offered us several different ways to rule in your favor. And I just want to be sure that I understand your argument. And so you should take as your premise that we're not addressing the question on which we denied cert in your cross-petition on whether incorporating the AAA rules by reference constitutes a delegation. Is it your argument that, first of all, there is no clear and unmistakable delegation here at all, so you win, or, alternatively, that even if there was a general clear and unmistakable delegation, that the carve-out provision carved out arbitrability as well as subject matter? Well, Your Honor, I think our first position is there is no clear and unmistakable delegation at all. But the second is, and most of that argument, just to be perfectly candid, is premised on the idea that the mere incorporation of the AAA rules is insufficient. But setting that aside, I do think that once you have a dispute that falls within the carve-out... Okay, okay, so I have correctly understood your argument. I believe you have. Okay, so on the first point, and you said to be candid that most of that argument does turn on the AAA rules, the incorporation of them not constituting a delegation. If we don't address that question, and if we just decide this case assuming that it can be, do you lose on the first point? I don't think so, Your Honor. I just want to be very careful in how I answer this. We do lose in the sense of if you're presuming that referencing the AAA rules means that there is some form of delegation to the arbitrator, but we don't lose in the sense that there are still limits on the scope of that delegation. Okay, I didn't mean, so you're referring to your second way, second route to victory, right? I'm just asking on the first point, do you lose on your argument that there was no clear and unmistakable delegation at all if we, declining to get into the question that we denied cert on, assume that incorporating the AAA rules by reference is enough to constitute a clear and unmistakable delegation? Do you lose on your first argument if that's how you approach it? I think we likely do. I'm assuming there are multiple layers of that argument, but I think in the interest of time, we likely do. So it's not your position that it's possible to incorporate the AAA rules by reference, but still through the context of the language and the provision, not intend simply by incorporating the AAA rules to clearly and unmistakably delegate. You don't have kind of a halfway position on your first argument. No, no, no, Your Honor, and I'm sorry, I misunderstood then what you were asking me to concede. Part of our reason that we don't think that this language is clear and unmistakable is precisely because it is ambiguous whether the parties included that language, because they just wanted to set the procedures for the arbitration, or whether they were actually trying to address and focus on the concept of delegation, and this subpart of a single rule out of 58 rules that happens to have anything that remotely resembles delegation. So I do think that you can say, in theory, Rule 7a, again, we disagree with this, but it's a delegation provision despite not having exclusive language and precluding the court from addressing it, and you can still say that just as parties adopt the same linguistic formulation when they want to delegate or not delegate or before Rule 7a even existed, the very use of this boilerplate is not enough to show that the parties had any intention whatsoever to delegate. Do you have a minute to wrap up, counsel? Thank you, Your Honor. I think the ultimate problem, and I realize what the court is struggling with, and we apologize for trying to get the court back into an issue that maybe it doesn't wish to address, but I think it is very difficult to construe this language, especially against a presumption that the reason you should not simply read the contract language on its face is to avoid a potentially circular result if the parties actually wanted an arbitrator to decide arbitrability, and so it doesn't make sense to say then the court would have to construe the carve-out. Again, that is just asking for a profoundly atextual construction of the plain text of this agreement in order to embrace a counterfactual about whether a delegation actually exists, and I think it would be very difficult to construe this language in a sensible way without getting into the delegation, but again, if the court does wish to try that anyway, we still do think that that carve-out is clear and unmistakable in saying that only some disputes are subject to the AAA rules, and if this is not one of those disputes, then it is not subject to the AAA rules, and it's not subject to any delegation, and it's ultimately up to the court in its traditional gatekeeping role to construe that language and say what it means. Thank you, counsel. Rebuttal, Mr. Shanmugam? Thank you, Mr. Chief Justice. Respondent's entire argument this afternoon keeps coming back to the premise that there is not a clear and unmistakable delegation by virtue of the incorporation of the AAA rules, but Respondent has conceded that the court can decide this case on the premise that the incorporation is sufficient. The court can and therefore should assume that the parties agreed to delegate at least some questions concerning whether a dispute is subject to arbitration to the arbitrator. Now, Respondent contends that a court should decide the scope of the delegation agreement, and Justice Breyer, of course, we agree with that. Our submission is simply that when a court is making that determination, the presumption of arbitrability should apply, and if it is ambiguous that a carve-out applies to the delegation, a court should hold that it does not, especially given how unlikely it is that the parties would divide up responsibility in that fashion. The purpose of delegation provisions is to assign clear responsibility where there is a dispute about the scope of an arbitration agreement. Now, that dispute can be a dispute about an express carve-out, so as here, whether the action at issue constitutes an action seeking injunctive relief or not, so as in my hypothetical from earlier, whether a dispute simply arises under the parties' agreement. It would effectively defeat a delegation to accept Respondent's view, because someone would have to decide when there is a dispute about whether the arbitrator or the court should decide arbitrability. And it's one thing to say that parties may want to divide up responsibility for different types of questions of arbitrability, such as who is subject to the arbitration agreement or whether a class action waiver is valid, but as I pointed out in my earlier colloquy with Justice Kavanaugh, we are not aware of any actual agreement in the real world that divides up responsibility for a particular question of arbitrability, and in particular, the paramount question of the scope of the arbitration agreement. Justice Kagan, we are decidedly not asking the court to recognize a third presumption here. Instead, our point is simply that once the first option's presumption has been satisfied, because there is clear and unmistakable evidence of a delegation, it falls out of the equation, and the ordinary presumption in favor of arbitrability applies. And that is because, in the words of this court's decision in Renner Center, quote, an agreement to arbitrate a gateway issue is simply an additional antecedent agreement, and the FAA operates on that additional arbitration agreement just as it does in any other. In closing, all we're asking the court to do today is what the court ordinarily does, to resolve a circuit conflict on the question presented and to correct a legal error on the part of the Court of Appeals. Having held that there was a valid delegation, the Court of Appeals failed to apply the presumption of arbitrability to the delegation agreement. This court's decisions make clear that the presumption applies, and that is all that the court needs say in a brief and narrow opinion applying settled law in order to vacate the Court of Appeals judgment. Thank you. Thank you, counsel. The case is submitted.